## Barr's Petition.

*Trusts and trustees—Interest on trust funds—Father and son—"Advancements."*

Where a father assigns to a trustee together with other personal property a number of promissory notes made by two of his sons with directions to pay "the net ·income of said properties," to the grantor and his wife and the survivor during their lives, and upon their death, after charging the two sons who had made the notes "as in the case of advancements, the sums due from them specified above, or so much thereof as shall not have been paid," to divide the properties held by him in trust among the grantor's six children, the promissory notes carry interest until the death of the surviving parent, and upon the final distribution of the estate the shares of the two sons who had made the notes are chargeable with all unpaid interest on the same.

Argued Oct. 26, 1911. Appeals, Nos. 174, 213, 214 and 215, Oct. T., 1911, by Ella F. Barr et al., from decree of C. P. No. 2, Allegheny Co., July T., 1906, No. 16, awarding distribution on petition of Charles W. Smith. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Petition for appointment of an auditor, and for distribution of a trust estate.

Exceptions to report of Arthur L. Over, Esq., auditor.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were decree of the court and in dismissing exceptions to report of auditor.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* for appellants.—The deed of trust intended these debts to create income and contemplated their payment, but, so far as not paid, charged them, in the division, to the debtors "as in the case" of advancements.

Thus, the debtors' shares were made the exclusive source of payment, but there was no remission of the interest: Daves v. Haywood, 54 N. C. 253; Horwitz v. Norris, 60 Pa. 261; Dean v. Winton, 150 Pa. 227; Yundt's App., 13 Pa. 575.

*John D. Meyer,* for appellees.—It is an acknowledged principal of law in this State that the debt of a child to his parent, by the act of the parent, may be changed from a debt to an advancement: Porter's Appeal, 94 Pa. 332; Green v. Howell, 6 W. & S. 203.

It seems to be settled law in this State that an advancement does not bear interest unless it was the intention of the parent clearly and unequivocally expressed that the advancement was to be charged with interest, and its value to be reckoned as of the date of the gift: Miller's Appeal, 31 Pa. 337; Farnum's Est., 176 Pa. 366.

OPINION BY MR. JUSTICE BROWN, January 2, 1912:

On September 5, 1893, Joseph Smith, Jr., assigned to Hugh D. Smith, in trust, certain personal property, included in which were the following items: A note of Smith, Bartlett & Company, dated November 3, 1892, for $13,000, payable one day after date to the order of Joseph Smith, Jr., with interest at eight per cent. per annum, upon which there was paid about the sum of $5,974.28; two notes of Charles W. Smith to the order of Joseph Smith, Jr., payable one day after date, one for $400, bearing date March 4, 1885, and the other for $90, dated August 2, 1885; a note of Alex. B. Smith, dated January 6, 1893, payable to the order of Joseph Smith, Jr., on demand, for $3,150; sundry

small notes and accounts due by Alex. B. Smith to Joseph Smith, Jr., amounting to about $350. Charles W. Smith and Alex. B. Smith were sons of Joseph Smith, Jr., and the former was the only responsible member of the firm of Smith, Bartlett & Company. After a direction to the trustee to sell any of the securities or obligations for the purpose of discharging certain specified indebtedness of Joseph Smith, Jr., there are the following provisions: "After the payment of said debts, said trustee shall pay to Joseph Smith, Jr., or to Elizabeth S. Smith, his wife, as he, in his descretion shall deem best, the net income of said properties, during the natural lives of said Joseph and Elizabeth Smith; and upon the death of either, the income shall be paid to the survivor during his or her natural life. Upon the death of both, said Joseph Smith, Jr., and Elizabeth S. Smith, said trustee, after charging to Charles W. Smith and Alex. B. Smith, as in the case of advancements, the sums due from them specified above, or so much thereof as shall not have been paid, shall divide the properties held by him in trust, into six equal parts." There then follow the names of the parties who are to receive these distributive shares. Joseph Smith, Jr., died July 8, 1902, and Elizabeth, his wife, on January 12, 1907. An auditor was appointed in the court below to distribute the assets remaining in the hands of the present trustee, the Union Trust Company of Pittsburgh, which succeeded to the trust upon the death of Hugh D. Smith on April 3, 1906, and from the decree of distribution which relieved the sons, Charles W. and Alex. B. Smith, from paying any interest on their obligations prior to the death of their mother, these appeals were taken.

The manifest purpose of Joseph Smith, Jr., in executing the deed of trust was the preservation of his estate and the creation of income for himself and wife during life. The only income that could have been derived from the promissory notes of the two sons above

enumerated was interest upon them. They were part of what their father in his deed of trust called "property", and his directions were that "the net income of said properties" should be paid to him and his wife during their joint lives and to the survivor upon the death of the other. The obligations of the sons were thus expressly charged with the creation of income when they passed to the trustee, and income from them could be nothing but interest upon them. As still further illustrating the intention of the father that the sons should pay interest to the trustee upon their obligations is the provision that, upon the final distribution of the estate, there should be charged against the sons so much upon their specified obligations as should not have been paid. If the father did not intend that these obligations should bear interest for the purpose of furnishing income to him and his wife, he certainly would not have contemplated that the sons would pay anything on them, for, upon whatever they might so pay, they would lose interest during the continuance of the trust. If the intention of Joseph Smith, Jr., as gathered from the entire declaration of trust, and not from a particular phrase in it, without reference to the context, is clear that his sons shall pay interest, they must be charged with the same on the distribution of the assets in the hands of the trustee, for they are mere volunteers and must take the bounty of their father upon the terms in which he bestowed it: Eichelberger's Estate, 135 Pa. 160.

To avoid the payment of the interest which the father clearly intended his sons should pay, they point to the clause in the declaration of trust which provides that, upon the death of himself and wife, the trustee shall charge the sons, as in the case of advancements, with the sums due by them upon their obligations. It is to be noted in passing that advancements may be charged with interest, and will be so charged if the intention of the testator is clearly so

expressed: Miller's Appeal, 31 Pa. 337; Porter's Appeal, 94 Pa. 332; Farnum's Estate, 176 Pa. 366. But upon this we need not dwell in the case before us, for the father did not declare that what he had lent to his sons should be deemed and treated as advancements by him to them. In Porter's Appeal, supra, relied upon to sustain the view of the court below, the words of the testator relating to the notes of his son and two daughters were, they "are deemed by me as advancments to the respective drawers thereof." The will was artistically drawn, evincing an accurate knowledge of technical terms, and it was, therefore, held that the testator was conclusively presumed to have employed the term "advancements" in its strict legal sense and had turned the notes of his children in unmistakable phrase into gifts to them, to be valued as of their respective dates. In the present case Joseph Smith did not declare that he deemed the amounts due on the obligations of his sons as advancements to them, nor did he direct that they should be so treated on the final distribution of the trust estate. As already shown, he regarded them as debts from which he was to derive income for himself and wife. Such declaration on his part would not, of course, have made the obligations debts of the sons, if barred by the statute of limitations or they were uncollectible for any other reason; but in creating the trust he had the right to treat them as debts, and the sons claiming under that trust must, therefore, regard them as valid obligations. All that the father provided in the clause upon which the sons now rely for immunity from paying interest was that, upon the final distribution of what might remain of the trust estate, the sons should be charged "as in the case of advancements" with the sums due from them, as specified in the declaration of trust. This means nothing more nor less than that what they owed upon the death of their mother, as specified in the declaration of trust, **principal and** unpaid interest, should be

counted as part of the corpus of the estate, and the amount due by each son deducted from his share. On the obligations of Alexander, payable on demand, interest is chargeable from the day the father declared them to be part of the property from which income was to be derived, and the son, now claiming a distributive share under the declaration of trust, must take it cum onere. If he refuses to so take it, he can get nothing, for he is a mere volunteer. He must take it as his father gave it to him in the declaration of trust, or not at all.

The decree of the court below is reversed and the record remitted, that distribution may be made in accordance with the views herein expressed, the costs on these appeals to be paid out of the fund in the hands of the trustee.